1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

Wendy E. Musell, State Bar No. 203507
Elisa J. Stewart, State Bar No. 219557
STEWART & MUSELL
600 Harrison Street, Suite 120
San Francisco, CA 94107
Telephone:   (415) 593-0083
Facsimile:   (415) 520-0920

Attorneys for Plaintiff
Nathan Hansford

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN HANSFORD,<br><br>        Plaintiff,<br><br>    v.<br><br>SOLANO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES and DOES ONE THROUGH FIFTY, inclusive,<br><br>        Defendants. | CIVIL ACTION NO.<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

## I.

## NATURE OF THE ACTION

1.    This action is brought by Plaintiff NATHAN HANSFORD (hereinafter "HANSFORD" or "PLAINTIFF") employed by Defendant SOLANO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES (hereinafter "DEFENDANT" or "DEPARTMENT") for religious discrimination and harassment and creating a hostile environment for Jewish employees, including PLAINTIFF, and failing or refusing to accommodate PLAINTIFF'S religious observances, practices and/or beliefs by requiring that he work the Sabbath.

2.    This action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 *et.seq.* as amended by Title I of the Civil Rights Act of 1991 (hereinafter "Title VII"),

the California Fair Employment and Housing Act, Cal. Gov't Code § 12940 *et.seq.* (hereinafter "FEHA"), the California Unruh Act, Cal. Civ. Code § 51 *et.seq.*, 52.1 (hereinafter "Unruh") and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*  Plaintiff seeks back pay, front pay, compensatory damages, as well as declaratory judgment and an injunction to restrain DEFENDANT from committing prohibited personnel practices, policies, customs and usages, from discriminating against PLAINTIFF and other employees of DEFENDANT based on religion.  PLAINTIFF seeks injunctive relief requiring DEFENDANT employer to take affirmative and effective steps to remove and otherwise discipline managers who have failed to comply with Title VII, the FEHA and the Unruh Act.  PLAINTIFF seeks injunctive relief requiring DEFENDANT to take specific actions designed, implemented and confirmed by qualified non-government consultants to ensure that all supervisory employees are adequately trained to identify, investigate and prevent further situations and complaints.  Such specific actions include, but are not limited to:

    a.  Allocation of significant funding and trained staff to implement all recommended changes within six (6) months;

    b.  Disciplinary action toward managers who have violated the agency's policies and failed to meet their legal responsibility to promptly investigate complaints and to take effective action to stop, prevent and further deter prohibited personnel practices against employees as set forth herein;

    c.  Establish and strictly measure EEO compliance as a critical element in every manager's performance standards;

    d.  Create a process for the prompt investigation of religious discrimination, harassment and reprisal complaints separate from the DEPARTMENT's process; and

    e.  Mandatory and effective training for all employees and managers regarding religious discrimination, investigations and appropriate corrective actions.

## II.
## JURISDICTION AND VENUE

    3.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343.  This action is authorized and instituted pursuant to sections 706(f)(1) and(3) of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. sections 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C.§1981a.  Supplemental jurisdiction of California claims is provided under 28 U.S.C. § 1367.

4.    The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of California.

### III.

### PARTIES

5.    Plaintiff NATHAN HANSFORD is a citizen of the United States who has been employed in California as Social Services Worker from on or about May of 2004 through to the present day by SOLANO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES.

6.    Defendant SOLANO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES  is a governmental agency of the County of Solano established pursuant to California Government Code § 33200, *et. seq.*

7.    Defendant DEPARTMENT is a person within the meaning of 42 U.S.C. § 2000e(a), and an employer within the meaning of 42 U.S.C. § 2000e(b).

### IV.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.    In accordance with the appropriate regulations, codes, and statutes, including but not limited to the California Government Code, PLAINTIFF has exhausted his administrative remedies by filing timely complaints with the California Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC").

9.    On or about April 24, 2008, the DFEH issued a "Right to Sue" letter as to the DEFENDANT identified herein.

10.    On or about June 6, 2008, the United States Department of Justice ("USDOJ") issued PLAINTIFF a "Right to Sue" letter as to the DEFENDANT identified herein.

11.    In accordance with the appropriate regulations, codes, and statutes, including but not limited to the Government Code, Plaintiff has exhausted his administrative remedies by filing a timely government tort claim with Solano County on or about March 3, 2008.  Solano County denied PLAINTIFF's government tort claim on or about April 24, 2008.

12.     All of the acts alleged herein were in the nature of a continuing violation and/or continuing torts.  All of the misconduct alleged herein was part of the same continuous pattern of discrimination and harassing practices, and at least some of the misconduct occurred within one year of the date PLAINTIFF filed his complaints with the EEOC and DFEH.

## V.

## FACTS COMMON TO ALL CAUSES OF ACTION

13.     HANSFORD is a member of a protected class based on his religion, Jewish.

14.     HANSFORD fully exhausted his administrative remedies.

15.     HANSFORD was employed as a Social Services Worker at the SOLANO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES for approximately four (4) years from May of 2004 through to the present day.

16.     HANSFORD disclosed to his supervisor at that time that he was Jewish and observed the Sabbath.  Shortly after his initial meeting with his immediate supervisor, HANSFORD began to be routinely called into Program Manager Robbie Wilson's office.  She grilled him about his day-to-day scheduling and tasks.  HANSFORD never saw any other co-worker being treated in the same manner by Robbie Wilson.

17.     HANSFORD never received any complaints or write-ups regarding his work performance.  When his first six-month performance evaluation was positive, Robbie Wilson called him into her office and stated that his immediate supervisor was too lenient.  Robbie Wilson, nonetheless, signed the performance evaluation as written.

18.     On or about August or September of 2005, HANSFORD received his first set of "Tzitzit."  Tzitzit is a religious garment having four corners with fringes attached to each of the four corners.  The Torah proclaims, "You shall make tassels (Gedilim) on the four corners of your garments…"  Pursuant to their faith, Jewish men are obligated to wear fringes on the corners of their garments.

19.     On or about September of 2005, Robbie Wilson requested that HANSFORD come to work on a Saturday, which is the Sabbath.  At that time, HANSFORD advised Robbie Wilson of his Jewish faith and observance of the Sabbath, which prohibited him from working

from sundown on Friday through to sundown on Saturday.  HANSFORD offered to come in on Sunday instead but Robbie Wilson refused.

20.    On or about September of 2005, Robbie Wilson called HANSFORD into her office to inquire about his Tzitzit garment.  HANSFORD explained the meaning behind it.

21.    On or about November of 2005, Robbie Wilson called HANSFORD into her office again and commented that children could be choked by his Tzitzit garment.  Similarly situated non-Jewish employees were not questioned regarding the wearing of neck ties, purses, or scarves, which would very likely hang lower than the Tzitzit and consequently pose a higher risk to minors in the workers care.  Program Manager Robbie Wilson's query was preceded and followed up by her requiring HANSFORD to work late on the Sabbath.  This was done notwithstanding her knowledge that HANSFORD's faith required that he observe the Sabbath and refrain from work during that time.

22.    On or about November 18, 2005, HANSFORD was asked by a supervisor of another unit to assist with certain tasks.  On or about November 21, 2005, HANSFORD followed up by checking in with Robbie Wilson regarding whether he could provide assistance.  Robbie Wilson responded to this simple query by grilling HANSFORD about his motives and responses to her.  Ultimately, HANSFORD was called into Robbie Wilson's office on five separate occasions and questioned about his request to provide assistance to another unit.

23.    On or about November 28, 2005, HANSFORD requested assistance from his supervisor and the union regarding Robbie Wilson's discriminatory treatment of him.  He further reported Robbie Wilson's comment that his Tzitzit could choke a child.

24.    On or about December 2, 2005, HANSFORD was scheduled to transport children out of state to be adopted.  The initial travel request drafted by the social worker indicated that he was to depart on Friday and return Sunday.  The scheduling was designed to permit him to observe the Sabbath.  Robbie Wilson denied the travel request and required that HANSFORD travel on Friday and return on the Sabbath.  It would not have cost the County any monies or affected the efficient functioning of the County's work to allow HANSFORD to return on Sunday, rather than on the Sabbath.

25.    HANSFORD reported Robbie Wilson's refusal to accommodate his observance of the Sabbath to Linda Orrante, Deputy Director of Child Welfare Services.  HANSFORD further reported Robbie Wilson's comment regarding the Tzitzit.  Linda Orrante laughed, and then stated that Robbie Wilson often made comments that seem out of place.  Linda Orrante instructed HANSFORD to pursue remedies with his Union if he felt he was being discriminated, harassed or retaliated against.  Linda Orrante also stated that she would investigate the matter.

26.    After HANSFORD's complaint, Robbie Wilson changed the travel arrangements requiring that he travel on Thursday and return after sundown on Friday.  HANSFORD attempted to speak with the social worker regarding the new travel times; however, she advised him that she had been instructed not to speak with him by Robbie Wilson.  HANSFORD was left with no other remedy but to work during the Sabbath on or about December 2, 2005.

27.    On or about December 14, 2005, Linda Orrante called HANSFORD into her office to start her investigation into his complaints.  At that time, HANSFORD complained that Linda Orrante laughed when he made the earlier complaint, thus appearing not to take his complaint of religious discrimination seriously.

28.    On or about December 21, 2005, HANSFORD was called into a meeting with Linda Orrante, Robbie Wilson, and Mr. Sullivan.  Linda Orrante advised HANSFORD that her investigation was inconclusive.  She further stated that HANSFORD's "story" was not even close to Robbie Wilson's version of events.  HANSFORD was asked what he wanted so that "everyone could get back to work".  HANSFORD was provided with no remedy and no further action was taken at that time.

29.    On or about March, 2006, HANSFORD was called into Patrick Duterte, Director of Health and Social Services' office regarding his complaints of religious discrimination.  Patrick Duterte commented that HANSFORD's complaint was a matter of "he said / she said" and that HANSFORD needed to follow the internal process.  HANSFORD advised that he had not been provided with any internal process to resolve his complaints.  Patrick Duterte did not respond and asked HANSFORD how everything else was going.  HANSFORD mentioned that he was hopeful that he could obtain a lateral position within the Department, which would have

provided HANSFORD further opportunities for promotion.  Three hours after disclosing this to Patrick Duterte, HANSFORD was denied the position.

30.     On or about March 31, 2006, at approximately 10:30 a.m., Robbie Wilson instructed HANSFORD to go to Turlock, California to pick up two adolescents.  Turlock is approximately 170 miles away from HANSFORD's work place. HANSFORD explained that it was the Sabbath and that given the amount of time required for travel, he would be required to work during the Sabbath.  Therefore, he asked that he not be required to work during the Sabbath.  Robbie Wilson denied his request for accommodation and insisted that he go to Turlock.  HANSFORD did not complete the transport before sundown; thereby requiring him to work on the Sabbath.  Other social workers were available to transport the adolescents at the time.

31.     On or about April 4, 2006, HANSFORD complained to Linda Orrante and Patrick Duterte that he had been required to work during the Sabbath again.  HANSFORD never received a response to his complaint.

32.     The refusal to accommodate HANSFORD's religious observances are given further context in light of anti-Semitic remarks made by a co-worker on two prior occasions.  The worker said, "When are you people going to find Jesus?" and "The Jews are the problem with the world because they start all the wars and kill all the Arab babies."  The comment, "When are you people going to find Jesus?" was made to another Jewish employee who was also a rabbi.  Both instances were immediately reported to Aaron Crutison, Social Services Administrator and EEO Compliance Officer.  Aaron Crutison took no action.  Rather, he advised HANSFORD that these matters "did not concern him."  The employee who said the comments sits one aisle away from HANSFORD.

33.     On or about April 10, 2006, HANSFORD filed a complaint with EEO.  On or about May 19, 2006, HANSFORD was advised that an investigation had been completed and that no evidence supported his allegations.

34.     On or about May 18, 2006, HANSFORD received a memorandum modifying his schedule.  His new schedule required that he work from 8:00 a.m. to 5:00 p.m. on Fridays.  The

schedule change was a limited remedy, as it indicated he would be required to work past

sundown on certain occasions.  In addition, with the change of seasons, he would be working

every Sabbath unless his schedule was changed again.  It also did not allow HANSFORD the

time necessary to perform certain activities in preparation for the Sabbath.

35.    In 2007, HANSFORD complained that anti-Semitic comments were made against

other Jewish employees within the Department.  On or about March 13, 2007, HANSFORD was

advised that an investigation had been completed regarding those complaints.

36.    On or about August 24, 2007, HANSFORD complained that he was required to

work past sundown on a Friday again.  His correspondence detailed all the efforts that he had

made to seek accommodation regarding his religious observances, including his offers to work

different days and times to avoid working during the Sabbath.

37.    On or about August 27, 2007, HANSFORD received a correspondence from an

EEO officer regarding HANSFORD's complaint that the County has repeatedly failed to grant

him a meaningful accommodation.  HANSFORD was referred to the May 18, 2006

memorandum which indicated that he would be required to work the Sabbath at times.

38.    On or about August 30, 2007, HANSFORD offered to work a schedule consisting

of four days per week, ten hours each day.  Management denied that request.  HANSFORD was

advised that the proffered schedule was not an option for Child Welfare Services.   However,

HANSFORD is informed and believes non-Jewish employees were allowed to work that work

schedule.

39.    On or about October 17, 2007, HANSFORD proposed working every other

Sunday to obtain an accommodation whereby he would be permitted to leave early on Fridays.

This too was rejected.

40.    On or about October 25, 2007, HANSFORD again presented his request for

religious accommodations.  He further advised that sundown would be occurring earlier in the

day and that he was trying to address that issue before it happened.

41.    On or about November 2007, HANSFORD was due for an evaluation of his job

performance. HANSFORD's evaluation was not conducted in a timely manner in violation of

County policy and Civil Service Rules. HANSFORD is informed, believes, and thereon alleges that no other similarly situated worker has been treated in a similar manner as HANSFORD.

42.    On or about November 2, 2007, HANSFORD received a correspondence from Christopher Cassels, Social Services Supervisor, suggesting that HANSFORD did not always seem to need an accommodation and directing HANSFORD's attention to times where HANSFORD had not sought one. Christopher Cassels further stated that he would meet with another supervisor to discuss HANSFORD's request for accommodation.

43.    On or about November 5, 2007, HANSFORD further clarified the efforts he had made towards seeking and obtaining an accommodation for his religious beliefs, reminding DEPARTMENT that sundown occurred at different times depending on daylight savings time. Thus, at times, the Sabbath started after work ended. HANSFORD again requested an accommodation for his religious observances and further requested that DEPARTMENT investigate his complaints of anti-Semitism.

44.    On or about November 7, 2007, HANSFORD received a schedule purporting to accommodate his observance of the Sabbath. The schedule permitted him to leave work earlier on two Fridays each month from November 16, 2007 through to February 22, 2008. However, the Sabbath occurs every week, not on an occasional basis.

45.    On or about November 30, 2007, HANSFORD met with Patrick Duterte to make another complaint of discrimination, harassment, and retaliation. Part of this complaint was regarding the fact that Christopher Cassels, HANSFORD's immediate supervisor, had been harassing HANSFORD since August 2007. Specifically, HANSFORD's complaint to Patrick Duterte outlined Christopher Cassels' refusal to accommodate for the Sabbath, refusing to give direction, stating that he was "too medicated to speak," threatening with discipline, and giving inappropriate work assignments (e.g., teenage girls etc.). The harassment occurred during the time and immediately after HANSFORD was attempting to secure a religious accommodation. During the meeting, Patrick Duterte stated that DEPARTMENT did not attach merit to HANSFORD's complaints, that it did not intend to remedy the harm caused and that

HANSFORD should seek "outside assistance" with the matter, suggesting that HANSFORD obtain legal counsel.

46.     On or about December 5, 2007, which was the next business day that Christopher Cassels worked, HANSFORD was presented with a "Proposed Disciplinary Action." The discipline sought was a 40-hour suspension for alleged misconduct regarding his entering contacts in the CMS/CWS system. This task is not included in HANSFORD's job duties and HANSFORD has received no training to complete such a task. Further, many other employees in HANSFORD's position did not input contacts but were not disciplined.

47.     On or about December, 2007, the DEPARTMENT circulated on its intra-net requesting that County employees report if they are losing contacts after entering them in the CMS/CWS. The posting further reported that the loss of contacts was a recurring problem with the system. On December 10, 2007, HANSFORD brought this posting to the attention of his supervisor. However, the DEPARTMENT continued to insist that HANSFORD be disciplined.

48.     A Skelly hearing was scheduled on or about December 18, 2007. HANSFORD was not provided any discovery regarding the charges until late in the day on December 17, 2007. After the Union complained of the failure to produce the Skelly packet in a timely fashion, HANSFORD was advised that he would be granted a new Skelly hearing on January 3, 2008 to supersede the unlawful hearing that had taken place on December 18.

49.     On or about January 2, 2008, the County advised HANSFORD that his Skelly hearing had been rescheduled on Friday, January 4, 2008, the Sabbath and HANSFORD was not scheduled to work that day. HANSFORD brought these issues to the DEPARTMENT's attention, but nonetheless agreed to appear on the 4th. The DEPARTMENT continued the hearing to January 24, 2008.

50.     In addition to the issues regarding the CMS/CWS system losing contacts, HANSFORD presented evidence that he lacked the requisite training for the entering of contacts, and that this task was not within his job duties. HANSFORD also produced evidence of approximately twenty (20) DEPARTMENT employees who had lost contacts that they entered in

the CWS/CMS system.  HANSFORD is informed, believes, and thereon alleges that no other worker was investigated or disciplined for lost contacts.

51.     On or about February 7, 2008, HANSFORD observed that his calendar had been cleared of all events from February 13 through February 20, 2008.  He sent a correspondence to his supervisors for further information regarding this scheduling change.  He later received a letter on February 7, 2008, but backdated to February 5, 2008, stating that he would be suspended for the failure to enter contacts as alleged in the original letter entitled "Proposed Disciplinary Action."   Because of the disciplinary action, HANSFORD has suffered a loss of wages.

52.     On or about March 10, 2008, HANSFORD was informed that he had been reassigned to a work group effective March 31, 2008.  His new co-worker would be Raquel Gastelumendi.  HANSFORD had made complaints about this co-worker in the past for making anti-Semitic statements including the statement, "When are you people going to find Jesus?" and "The Jews are the problem with the world because they start all the wars and kill all the Arab babies."  HANSFORD made complaints about her statements at the times that she made them.  When the complaints were reported to Aaron Crutison, he told HANSFORD that it was none of his business.

53.     On or about March 11, 2008, the Solano County Board of Supervisors held its regularly scheduled meeting, which is posted on the County website.  The meeting agenda included a closed session to discuss "potential litigation:  one case."  HANSFORD is informed and believes and thereon alleges that his Government Tort Claim, which was pending before the Board at that time, was the only potential case currently pending.

54.     On or about March 12, 2008, Joe Stoddard approached HANSFORD and stated, "You no longer have a Sabbath," and further stated, "Your Sabbath has ended."  He further advised HANSFORD that he would be required to work the Sabbath notwithstanding his repeated requests for accommodation to observe his faith.

55.     On or about March 17, 2008, supervisor Joe Stoddard instructed HANSFORD that he was not to continue to request an accommodation for his observation of the Sabbath and

that he was not to make any further "harassment complaints." Joe Stoddard further stated that HANSFORD's repeated complaints of religious discrimination, harassment and retaliation were "hostile." During this interaction, Joe Stoddard intermittently stared at HANSFORD in an intimidating manner. HANSFORD felt unsafe during the interaction.

56.    On or about March 2008, after the meeting in which Joe Stoddard informed HANSFORD that he may not request an accommodation for his religious observance, Joe Stoddard provided HANSFORD a Easter greeting that said, "Happy Easter," even though Joe Stoddard is well aware that HANSFORD does not celebrate Easter.

57.    After filing a Government Tort Claim (as set forth above), informing the County that HANSFORD had filed a claim of religious discrimination and harassment with the DFEH and intended to proceed with legal action, as well as providing further complaints of religious discrimination and harassment, DEPARTMENT stated in late April 2008, that it would allow HANSFORD an accommodation for his religious observation, but that it would also require HANSFORD, to work during the Sabbath, including overtime, at DEPARTMENT's sole discretion. HANSFORD was not provided guidance by the county regarding when, and on what basis, his request for religious accommodation would not be honored.

58.    After filing a Government Tort Claim (as set forth above), informing the County that HANSFORD had filed a claim of religious discrimination and harassment with the DFEH and intended to proceed with legal action, as well as providing further complaints of religious discrimination and harassment, DEPARTMENT, on or about May 1, 2008, issued a negative evaluation against HANSFORD. HANSFORD had never had a complaint from the public or his co-workers. To the contrary, HANSFORD had received numerous compliments and praise for his work during that time frame. The evaluation negatively impacted HANSFORD's pay increase and promotional opportunities. The evaluation was approximately six (6) months late in violation of County policy.

59.    On or about May 7, 2009, HANSFORD was directed to transport a disabled child on foot across a busy highway when a disabled access van was accessible, in violation of County policies.

60.    On or about June 2, 2008, HANSFORD was directed to purchase over two hundred (200) bus passes from Fairfield and Vacaville public transportation.  This task conflicted with prior transport appointments already delegated to HANSFORD.  When HANSFORD communicated the conflict, he was ultimately directed to take a toddler child with him to public transportation during the complex transactions involving thousands of dollars.  There was no seating and nowhere to place the toddler for safekeeping during the transactions.  HANSFORD objected to this task on the basis that it would place the toddler at risk to accompany HASNFORD to a busy open public space where the toddler would not have HANSFORD's full attention during the transactions.  HANSFORD's objection was ignored.

61.    On or about June 9, 2008, DEPARTMENT and its agents received notice of the DFEH "Right to Sue" notice issued to HANSFORD.

62.    On or about June 12, 2008, Karl Porter, Social Services Manger, called HANSFORD leaving a message directing HANSFORD to contact him.  HANSFORD located Karl Porter in Aaron Crutison's office shortly thereafter.  Aaron Crutison motioned HANSFORD into the office.  Karl Porter directed HANSFORD to a seat.  HANSFORD left the office door open and sat down.  Karl Porter stood up and closed the door.  HANSFORD became distressed about the nature of the meeting and asked why the door was being shut.  Karl Porter turned towards HANSFORD.  He appeared visibly angry and his tone and manner were hostile towards HANSFORD.  Karl Porter said, "Do you feel unsafe?"  HANSFORD responded that he did.  Karl Porter repeated this question and raised his voice.  HANSFORD repeated that he did.  Karl Porter raising his voice to almost a shout said, "You feel physically unsafe!"  HANSFORD responded that he did.  Karl Porter then demanded that HANSFORD explain why he felt unsafe.  HANSFORD told Karl Porter that he was aware that DEPARTMENT and its agents had received notice of his right to sue.  Karl Porter then began to question HANSFORD about an unrelated incident earlier in the day.

63.    On or about June 17, 2008, HANSFORD's work calendar contained a work assignment that was put in his calendar after the date the assignment was to have been completed.  As HANSFORD had no notice of the assignment, it was not completed as directed

64.     On or about June 23, 2008, after HANSFORD made several complaints regarding tasks that were being delegated to him and his interaction with Karl Porter and Aaron Crutison, Karl Porter advised HANSFORD in a meeting where HANSFORD was refused his right to representation in violation of County policies, that he would receive a counseling memo and that a Performance Improvement Plan would be enforced.

65.     On or about July 2, 2008, HANSFORD was directed to conduct a task with and concerning Raquel Gastemeundi, the same individual who had made anti-Semitic statements to HANSFORD in the past.

66.     HANSFORD is informed and believes that non-Jewish employees were provided with accommodations for their religious beliefs, including but not limited to a Seventh Day Adventist being allowed to observe the Sabbath from sundown on Friday to Saturday.

67.     DEPARTMENT, and through its agents, failed to take appropriate remedial steps to stop the discrimination and harassment of HANSFORD based on his religion.

68.     DEPARTMENT, and through its agents, knew of HANSFORD's protected activity at all times relevant to this action.

## VI.

### FIRST CLAIM

### (UNLAWFUL DISCRIMINATION BASED ON RELIGION – TITLE VII)

69.     Paragraphs 1 through 68 are hereby incorporated by references as though fully set forth herein.

70.     DEFENDANT  has unlawfully discriminated against PLAINTIFF based on his religion in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* Within the time provided by law, PLAINTIFF made a complaint with the EEOC.

71.     PLAINTIFF is a member of a protected group based on his religion (Jewish).

72..    Prior to filing complaints of religious discrimination, harassment, retaliation and failure to accommodate his observance of the Sabbath with the County, the DFEH and the EEOC, PLAINTIFF had never received a negative evaluation.

73.    DEFENDANT treated PLAINTIFF less favorably than similarly situated employees who were not Jewish.

74.    At all relevant times, DEFENDANT was informed and aware of PLAINTIFF's Jewish faith and religious observances.

75.    At all relevant times, DEFENDANT was informed and aware that PLAINTIFF's religious observances conflicted with his ability to work late in the day on the Sabbath.

76.    DEFENDANT discriminated against PLAINTIFF in the terms and conditions of his employment on the basis of his religion in violation of Title VII.

77.    PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages because of DEFENDANT's discriminatory practices unless the Court grants relief.

## VII.

## SECOND CLAIM

## (UNLAWFUL HARASSMENT BASED ON RELIGION – TITLE VII)

78.    Paragraphs 1 through 77 are hereby incorporated by references as though fully set forth herein.

79.    At all relevant times, DEFENDANT was informed and aware of PLAINTIFF's Jewish faith and religious observances.

80.    At all relevant times, DEFENDANT was informed and aware that PLAINTIFF's religious observances conflicted with his ability to work late in the day on the Sabbath.

81.    Since at least May of 2004, DEFENDANT has engaged in unlawful employment practices in violation of §703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a).  These practices include subjecting PLAINTIFF to a hostile, abusive, intimidating, and offensive work environment. Within the time provided by law, PLAINTIFF made a complaint with the EEOC.

82.    The effect of the practices complained of in paragraph 77 above has been to deprive PLAINTIFF of equal employment opportunities and otherwise to adversely affect his status as an employee because of his religion, Jewish.

83.    The unlawful employment practices complained of in paragraph 77 above were and are intentional.

84.    PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages as a result of DEFENDANT's discriminatory practices unless the Court grants relief.

## VIII.

## THIRD CLAIM

## (RETALIATION – TITLE VII )

85.    Paragraphs 1 through 84 are hereby incorporated by references as though fully set forth herein.

86.    At all relevant times, DEFENDANT was informed and aware of PLAINTIFF's Jewish faith and religious observances.

87.    At all relevant times, DEFENDANT was informed and aware that PLAINTIFF's religious observances conflicted with his ability to work late in the day on the Sabbath.

88.    Since at least September of 2005 and ongoing thereafter, DEFENDANT has engaged in the unlawful employment practice of retaliation, in violation of §704(a) of Title VII, 42 U.S.C. §2000e-3(a), by admonishing, failing to accommodate his religious observance of the Sabbath, disciplining and otherwise affecting the terms and conditions of his employment for for engaging in protected activity.   Within the time provided by law, PLAINTIFF made a complaint with the EEOC.

89.    The effect of the practice complained of in paragraph 82 above has been to deprive PLAINTIFF of equal employment opportunities and otherwise to adversely affect his status as an employee because of his protected activity. The unlawful employment practice complained of in paragraph 82 above was intentional.

90.    PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages as a result of DEFENDANT's discriminatory practices unless the Court grants relief.

## IX.

## FOURTH CLAIM

### (UNLAWFUL DISCRIMINATION BASED ON RELIGION – FEHA)

91.    Paragraphs 1 through 90 are hereby incorporated by reference as though fully set forth herein.

92.    At all times herein mentioned, California Government Code §12940, *et seq.*, was in full force and effect and was binding upon DEFENDANT.  Said sections require DEFENDANT to refrain from discriminating against an employee because of religions among other things.  Within the time provided by law, PLAINTIFF made a complaint to the DFEH.

93.    At all times herein mentioned, PLAINTIFF was an employee within the meaning and scope of the FEHA, Cal. Govt. Code § 12926(c) and, as such, PLAINTIFF had the right to maintain his employment without experiencing discrimination on the basis of his religion.

94.    At all times herein mentioned, DEFENDANT was an employer within the meaning of the FEHA, Cal. Govt. Code § 12926(d) and, as such, is barred from discriminating in employment decisions on the basis of religion.

95.    At all relevant times, DEFENDANT was informed and aware of PLAINTIFF's Jewish faith and religious observances.

96.    At all relevant times, DEFENDANT was informed and aware that PLAINTIFF's religious observances conflicted with his ability to work late in the day on the Sabbath.

97.    From May 2004 and continuously thereafter until the present day, DEFENDANT maintained and required PLAINTIFF to work in an environment which was, and continues to be, discriminatory to similarly situated Jewish employees in general and in particular to PLAINTIFF.  PLAINTIFF alleges that similarly situated non-Jewish employees were not subjected to the same treatment.

98.    DEFENDANT violated Cal.. Govt. Code §12940(a) by discriminating against PLAINTIFF based on his religion (Jewish).  Specifically, DEFENDANT subjected PLAINTIFF to disparate treatment in the terms and conditions of employment.   PLAINTIFF was discriminated against on the basis of religion when DEFENDANT failed to respond effectively

to his complaints of harassment, discrimination and retaliation.

99.    The misconduct of DEFENDANT which constitutes a religious based harassment and discrimination of Jewish employees, and in particular PLAINTIFF, includes but is not limited to the facts alleged in each paragraph of this Complaint.

100.    PLAINTIFF repeatedly reported the misconduct of DEFENDANT and DEFENDANT's agents to Defendant DEPARTMENT.  However, DEFENDANT did not appropriately investigate the matter, nor did DEFENDANT take appropriate action to cause the discrimination, harassment and retaliation to cease, or to prevent any similar misconduct from occurring in the future.

101.    DEFENDANT failed to properly, promptly, and effectively acknowledge the existence of religious discrimination that exists at the DEPARTMENT.  DEFENDANT further failed to respond to PLAINTIFF's complaints, develop a plan for dealing with the discrimination and harassment in the future, and inform PLAINTIFF of such a plan or any actions that they were taking.  The DEFENDANT's failure to follow up on these complaints and/or to take any action to eradicate the religion based discrimination and/or harassing practices at DEPARTMENT unfairly, negatively and disparately impacted PLAINTIFF in particular, and Jewish employees in general.

102.    PLAINTIFF is informed, believes and thereon alleges that DEFENDANT failed to comply with its statutory duty under the FEHA to take all reasonable and necessary steps to prevent the occurrence of discrimination based on religion and to eliminate such discrimination from the workplace.  This includes, but is not limited to: (a) failing to have an ineffective policy regarding workplace harassment and discrimination; (b) failing to have an effective procedure for addressing or investigating complaints of religious based harassment and discrimination ; (c) failing to effectively implement any procedure it may have had for investigating complaints of religious based harassment and discrimination; and (d) failing to adequately investigate PLAINTIFF's complaints, despite his numerous complaints to DEFENDANT; and (e) failing to appropriately train its employees and supervisors.

103.    The aforementioned discrimination and harassment against PLAINTIFF in the terms, conditions, and/or privileges of employment on the basis of religion constitutes an unlawful employment practice and is expressly prohibited under the FEHA.  By refusing to take action to abate the offensive and continuing discriminatory and/or harassing conduct of its agents, DEFENDANT acted and/or failed to act and/or attempted to act in such a way as to aid, abet, incite, compel and/or coerce each of its agents in doing such acts prohibited by the FEHA, as alleged above.

104.    The aforementioned conduct of DEFENDANT constitutes a continuing violation of PLAINTIFF's rights from the first act to the latest action.

105.    PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages because of DEFENDANT's discriminatory practices unless the Court grants relief.

**X.**

**FIFTH CLAIM**

**(UNLAWFUL HARASSMENT BASED ON RELIGION – FEHA)**

106.    Paragraphs 1 through 105 are hereby incorporated by references as though fully set forth herein.

107.    Under the FEHA, it is unlawful for an employer to harass an employee on the basis of religion.

108.    At all relevant times, DEFENDANT was informed and aware of PLAINTIFF's Jewish faith and religious observances.

109.    At all relevant times, DEFENDANT was informed and aware that PLAINTIFF's religious observances conflicted with his ability to work late in the day on the Sabbath.

110.    In violation of PLAINTIFF's right to be free from religious-based harassment under the FEHA, DEFENDANT permitted its agents, supervisors and employees to harass PLAINTIFF, although it was well aware that this conduct was taking place.

111.    At no time did PLAINTIFF consent to any of the DEFENDANT's acts, which are alleged in this claim for relief above.

112.    PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages because of DEFENDANT's discriminatory practices unless the Court grants relief.

## XI.

## SIXTH CLAIM

## (RETALIATION – FEHA)

113.    Paragraphs 1 through 112 are hereby incorporated by references as though fully set forth herein.

114.    At all times herein mentioned, Government Code §12940, *et seq*., was in full force and effect and binding upon DEFENDANT.  These sections require DEFENDANT to refrain from retaliating against a person who opposes discrimination forbidden by the Fair Employment and Housing Act ("FEHA"), or who files a complaint, or who assists in any FEHA proceeding.

115.    At all relevant times, DEFENDANT was informed and aware of PLAINTIFF's Jewish faith and religious observances.

116.    At all relevant times, DEFENDANT was informed and aware that PLAINTIFF's religious observances conflicted with his ability to work late in the day on the Sabbath.

117.    At all times during PLAINTIFF's employment with DEFENDANT, he performed his duties in a satisfactory fashion as hereto set forth.

118.    DEFENDANT retaliated against PLAINTIFF by:

a.    Failing to adequately investigate his repeated complaints of religious based harassment, discrimination and retaliation;

b.    Failing to take appropriate and sufficient correct action to stop the harassment and discrimination in employment or prevent any similar misconduct from occurring in the future;

c.    Failing to keep Plaintiff about the progress of the "investigation," of his complaints, if such investigation took place;

d.    Failing to assure PLAINTIFF in words and action that retaliation would not be tolerated;

e.    Failing to recognize retaliation by employees, supervisors and agents of DEFENDANT when it occurred;

f.    Refusing to address PLAINTIFF's complaints of religious based harassment, discrimination and retaliation;

g.    Refusing to promote and transfer PLAINTIFF to alternate positions after he made complaints of religious based harassment, discrimination and retaliation;

h.    Refusing to reasonably accommodate PLAINTIFF's request to observe the Sabbath; and,

i.    Disciplining PLAINTIFF, among other things.

119.    PLAINTIFF is informed and believes that in addition to the practices enumerated in this Cause of Action, DEFENDANT has engaged in other retaliatory practices, which are not fully known by PLAINTIFF.  The above-enumerated acts of retaliation are not meant to be exhaustive, but merely exemplary of the kinds of acts of retaliation against PLAINTIFF.

120.    By refusing to take action to abate the offensive and continuing discriminatory and/or harassing conduct of each of its employees, supervisors and agents, DEFENDANT acted and/or failed to act and/or attempted to act in such a way as to aid, abet, incite, compel and/or coerce each of the other DEFENDANTS in doing such acts prohibited by the FEHA, as alleged above.

121.    The aforementioned conduct of DEFENDANT constitutes a continuing violation of PLAINTIFF's rights from the first act to the latest action.

122.    PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages as a result of DEFENDANT's discriminatory practices unless the Court grants relief.

## XII.

## SEVENTH CLAIM

### (UNLAWFUL DISCRIMINATION – UNRUH ACT)

123.    Paragraphs 1 through 122 are hereby incorporated by references as though fully set forth herein.

124.    The Unruh Act provides that "All persons within the jurisdiction of this state are free and equal, and no matter what their …. religion … are entitled to the full and equal accommodations, advantages facilities, privileges, or services in all business establishments of every kind whatsoever."

125.    DEFENDANT has unlawfully discriminated against PLAINTIFF based on his religion in violation of the Unruh Act.   Within the time provided by law, PLAINTIFF made complaints with the EEOC and DFEH.

126.    PLAINTIFF is a member of a protected group based on his religion (Jewish).

127.    Prior to filing complaints of religious discrimination, harassment, retaliation and failure to accommodate his observance of the Sabbath with the County, the DFEH and the EEOC, PLAINTIFF had never received a negative evaluation.

128.    DEFENDANT treated PLAINTIFF less favorably than similarly situated employees who were not Jewish.

129.    At all relevant times, DEFENDANT was informed and aware of PLAINTIFF's Jewish faith and religious observances.

130.    At all relevant times, DEFENDANT was informed and aware that PLAINTIFF's religious observances conflicted with his ability to work late in the day on the Sabbath.

131.    DEFENDANT discriminated against PLAINTIFF in the terms and conditions of his employment on the basis of his religion in violation of the Unruh Act.

132.    PLAINTIFF is now suffering and will continue to suffer irreparable injury and monetary damages because of DEFENDANT's discriminatory practices unless the Court grants relief.

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests that this Court:

1.    Issue a permanent injunction:

    a.    Requiring DEFENDANT to abolish discrimination;

    b.    Allocation of significant funding and trained staff to implement all recommended changes within six months;

c. Discipline managers who have violated the agency's policies and failed to meet their legal responsibility to promptly investigate complaints and to take effective action to stop, prevent and further deter prohibited personnel practices against employees as set forth herein;

d. Establish and strictly measure EEO compliance as a critical element in every manager's performance standards;

e. Create a process for the prompt investigation of religious discrimination, harassment and reprisal complaints separate from the agency's process; and,

f. Mandatory and effective training for all employees and managers regarding religious discrimination,, investigations and appropriate corrective actions.

2. Order DEFENDANT to pay lost wages, lost benefits and all other compensation denied or lost to PLAINTIFF by reason of DEFENDANT's unlawful actions, in an amount to be proven at trial;

3. For compensatory damages for PLAINTIFF's emotional pain and suffering, in an amount to be proven at trial;

4. For reasonable attorneys' fees and costs of suit;

5. For interest on damages, including pre- and post-judgment interest and an upward adjustment for inflation; and

6. For such other and further relief as the Court deems just and proper.

Dated  July 18, 2008                         Respectfully submitted,

By:  _Elisa J. Stewart_ _____

Elisa J. Stewart
STEWART & MUSELL

Attorneys for Plaintiff
NATHAN HANSFORD

Nathan Hansford v. Solano County et al.
COMPLAINT AND DEMAND FOR JURY TRIAL                         Page 23

## DEMAND FOR JURY TRIAL

1

2        Plaintiff hereby demands a jury trial for each claim herein for which he has a right to a

3    jury.

4

5

6    Dated  July 18, 2008                    Respectfully submitted,

7

8                                    By:  _____

9                                         Elisa J. Stewart
                                          STEWART & MUSELL

10
                                          Attorneys for Plaintiff
11                                        NATHAN HANSFORD

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

Nathan Hansford v. Solano County et al.
**COMPLAINT AND DEMAND FOR JURY TRIAL**                              Page 24